Matthew IANNIELLO, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 303, Docket 93–2309.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1993.

Decided Nov. 18, 1993.

See also 808 F.2d 184.

Judd Burstein, P.C., New York City (Jay Goldberg, P.C., of counsel), for petitioner-appellant.

Daniel A. Nardello, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., John W. Auchincloss II, Asst. U.S. Atty., of counsel), for respondent-appellee.

Before: LUMBARD, OAKES, and MAHONEY, Circuit Judges.

LUMBARD, Circuit Judge:

Matthew Ianniello appeals from an order entered on May 5, 1993 in the Southern District of New York, Stanton, *J.*, dismissing his petition under 28 U.S.C. § 2255. Ianniello asserted that his RICO conviction should be vacated because the jury was not charged that it had to find a relationship among the predicate acts supporting the RICO violation. Judge Stanton doubted the inadequacy of the jury charge, and found any error harmless. On appeal, Ianniello contends that the district court erred in so finding. We agree with the district court's finding of harmless error, and affirm.

## I.

Ianniello's crimes are detailed in our opinion on his direct appeal. *United States v. Ianniello*, 808 F.2d 184, 186–88 (2d Cir.1986), *cert. denied*, 483 U.S. 1006, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987). Ianniello and a partner secretly controlled and profited from a group of bars and restaurants in New York City: the Peppermint Lounge (at various times known as Hollywood and G.G. Barnum's); the New Peppermint Lounge; the Mardi Gras; the Haymarket; the Grapevine; and Umberto's Clam House. The "heart of the enterprise was [a] scheme to skim cash on a massive scale" from the businesses.

The government established the following facts at trial:

—Ianniello and his partner skimmed cash from bar and admission receipts of the businesses, and failed to report the income on personal tax returns.

—The books, records and tax returns of the businesses were falsified to conceal the diversion of money and to avoid payment of taxes by the businesses.

—The Peppermint Lounge underwent chapter 11 bankruptcy proceedings and was obligated to file monthly financial statements with the bankruptcy court. Cash was skimmed during this period and the statements filed with the court were falsified.

—The interests of Ianniello and his partner were concealed from State liquor licensing authorities in furtherance of the cash skimming scheme.

—The facilities of the New Peppermint Lounge were acquired when the original

Peppermint Lounge was closed for fire code violations. The transaction was concealed from State liquor licensing authorities.

—Ianniello and his partner ran the scheme from the offices of C & I Trading at 135 West 50th Street in Manhattan.

The indictment contained multiple counts of mail fraud, bankruptcy fraud and tax evasion. It also contained counts for substantive and conspiracy violations of RICO, 18 U.S.C. § 1962(d), based on multiple alleged predicate acts of mail fraud.

Judge Weinfeld, who conducted the trial, held a Fed.R.Crim.P. 30 conference to entertain the parties' objections to proposed jury charges. One of Ianniello's objections concerned the RICO pattern requirement:

> MR. BURSTEIN [for defendants]: Page 42, your Honor, the third sentence of the second paragraph, "You need not find any connection or interrelation between the racketeering acts," we submit that that is an incorrect statement of the law in light of the Sedima case in the Supreme Court which says that the racketeering acts must and in order for there to be a pattern there must be some relationship upon them.

Judge Weinfeld eventually charged the jury without stating whether a relationship between racketeering acts was necessary:

> The fourth element of the offense requires that the government prove beyond a reasonable doubt that the defendant whose case you are considering engaged in a pattern of racketeering activity.

> To establish this element, the government must prove beyond a reasonable doubt that during the course of his association with the enterprise, the defendant committed or aided and abetted the commission of at least two of the racketeering acts specified in the indictment.

Again in conference, counsel objected to the jury charge:

> MR. ROCCO [for the defendants [1]]: ....

> ... I believe that after the Rule 30 conference, counsel asked your Honor to charge the jury under RICO that predicate acts had to be interrelated under Sedima against Imrex.

> I listened to your Honor's charge. I didn't hear that in the charge as given by the court. I respectfully except to that portion of the charge that failed to charge that the predicate acts had to be interrelated.

The government responded to the objection: "[M]r. Rocco's point that the predicate acts have to be charged as being related I think was rejected by the Court of Appeals in U.S. vs. Weis[ ]man, specifically."

The jury convicted Ianniello on thirty-five counts of mail fraud and six counts of tax evasion. The jury also found that Ianniello committed every one of the forty-four acts of mail fraud submitted to it by the trial court for consideration as predicate RICO acts, and convicted Ianniello of substantive and conspiracy violations of RICO. Judge Weinfeld sentenced Ianniello on the RICO counts to concurrent six year prison terms and separate $10,000 fines, and on the remaining counts to concurrent five year prison terms, separate $1,000 fines, and two years of probation.

Ianniello appealed his conviction on the ground that the trial court improperly instructed the jury on RICO's "pattern" requirement. Ianniello complained that the trial court failed to instruct the jury that conviction required a finding that the predicate acts were interrelated. According to Ianniello, the Supreme Court's opinion in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) supported such a requirement.[2]

---

1. The participants at the post-charge conference agreed to avoid repetition by "consider[ing] the lawyers [as] speaking for everyone" unless specific exception were taken.

2. *Sedima* stated:
   [W]hile two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat

We affirmed, based on the teaching of *United States v. Weisman*, 624 F.2d 1118 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980), that relatedness between predicate acts was subsumed within a finding of a RICO "enterprise." *Ianniello*, 808 F.2d at 190–91.

Under *Weisman*, relatedness is supplied by the concept of "enterprise" expressed in section 1962(c) and the ten year requirement of section 1961(5). The link between the acts [was] supplied by the fact that "the predicate acts constituting a 'pattern of racketeering activity' must all be done in the conduct of the affairs of an 'enterprise.'" This also supplies the necessary element of continuity, since an enterprise is a continuing operation.

*Id.* at 190 (footnotes omitted) (quoting *Weisman*, 624 F.2d at 1122). We found the difference between *Weisman* and *Sedima* to be "one of form and not of substance," *id.* at 191, and concluded that "any failure to charge in precisely the language contemplated by *Sedima* would be at most harmless error." *Id.*

Three years later, we reconsidered the relatedness issue en banc, found that "the *Sedima* dictum was entitled to far greater deference than *Ianniello* gave it," and changed course. *United States v. Indelicato*, 865 F.2d 1370, 1381 (2d Cir.) (en banc), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989). We rejected our prior view that *Weisman* and *Sedima* could be reconciled: "we no longer adhere to the view of *Ianniello* and its progeny that relationship and continuity are necessary characteristics of a RICO enterprise." *Id.* at 1382. Instead, we held that "the concepts of relatedness and continuity are attributes of activity, not of a RICO enterprise, and that a RICO pattern may not be established without some

showing that the racketeering acts are interrelated and that there is continuity or a threat of continuity." *Id.* at 1381.

On July 24, 1992, Ianniello filed a § 2255 petition seeking review of his conviction in light of the revised interpretation of the pattern requirement. The district court denied that petition by order entered May 5, 1993. Ianniello, who is still serving his sentence, appeals.

## II.

▮ Ianniello's claim, in the abstract, is that his conviction is tainted because the jury instruction permitted the jury to convict him for conduct that *Indelicato* placed beyond the reach of punishment. We agree that Ianniello's abstract claim is sufficiently fundamental to warrant collateral review and retroactive application of *Indelicato*, but we find that overwhelming evidence against Ianniello renders harmless the jury instruction error in this case.

The crux of Ianniello's § 2255 petition is that he might have been convicted for conduct that is not illegal. The jury instructions permitted a finding of guilt if the jury found that "during the course of his association with the enterprise, [Ianniello] committed or aided and abetted the commission of at least two of the racketeering acts specified in the indictment." No mention was made of a requirement that those acts be related to one another. It is possible that a defendant whose acts are not related—and therefore not illegal under RICO—could nevertheless be convicted upon such a defective jury instruction. That defendant suffers a fundamental wrong: conviction for conduct that is not illegal. *See Davis v. United States*, 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2305–06, 41 L.Ed.2d 109 (1974). Ianniello's interest in

of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." Significantly, in defining "pattern" in a later provision of the same bill,

Congress was more enlightening: "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." This language may be useful in interpreting other sections of the Act. *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (citations omitted).

collateral review is especially compelling because it was his legal position, raised and rejected on direct appeal, that was vindicated in *Indelicato.* We believe we should hear Ianniello's claim on collateral review and apply *Indelicato* retroactively.

The government contends that the change wrought by *Indelicato* was a mere refinement of nuances in legislative interpretation. That may be so, but if the refinement of nuances means that a person might have been convicted for conduct that is not illegal, then it ceases to be a matter of interpretive curiosity and becomes a matter of fundamental importance. *Ingber v. Enzor,* 841 F.2d 450, 454–55 (2d Cir.1988) (permitting collateral review of mail fraud conviction after *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), limited reach of mail fraud statute); *see also United States v. Shelton,* 848 F.2d 1485, 1489 (10th Cir.1988) (permitting collateral review even though defect concerned a "non-constitutional decision concerning the reach of a federal statute, rather than a ... decision on the scope of a constitutional guarantee," because "the practical effect of both decisions is the same; the defendant is not subject to trial on the charge.").

Some decisions suggest that the Supreme Court, since *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), has applied a more restrictive retroactivity analysis to new procedural rules than to new substantive rules. *See United States v. Woods,* 986 F.2d 669, 676–77 (3d Cir.), *cert. denied,* ––– U.S. –––, 114 S.Ct. 90, 126 L.Ed.2d 58 (1993); *United States v. McClelland,* 941 F.2d 999, 1001 (9th Cir.1991). The characterization of *Teague* and its progeny as 'procedural' cases seems incomplete, because they recognize the retroactivity of new rules that place conduct beyond the reach of punishment. *See, e.g., Sawyer v. Smith,* 497 U.S. 227, 241, 110 S.Ct. 2822, 2830–31, 111 L.Ed.2d 193 (1990). Such rules surely are substantive rather than procedural. In any event, the *Teague* line of cases does not purport to affect the holding in *Davis,* and

decisions including *Woods* and *McClelland* regard *Davis* as authoritative. Moreover, *Davis* is consistent with our holding in *Ingber,* which we similarly continue to regard as good authority. *See, e.g., United States v. Tillem,* 906 F.2d 814, 825 (2d Cir.1990). We conclude that *Indelicato* redefined the substance of a RICO violation, placed conduct beyond the reach of punishment, and is retroactively applicable on collateral review.[3]

■ We nevertheless affirm the dismissal of Ianniello's § 2255 petition, because the evidence demonstrates beyond a reasonable doubt the missing element in the jury instruction: the relatedness among Ianniello's predicate acts. The jury found that Ianniello committed all forty-four of the predicate acts of mail fraud that the trial court submitted for the jury's consideration. Those forty-four acts are densely related. As the district court explained,

> evidence that the predicate acts were interrelated was overwhelming. According to *Indelicato,* 865 F.2d at 1382, the interrelationship between acts suggesting the existence of a pattern may be established by "their temporal proximity, or common goals, or similarity of methods, or repetitions." Here, the forty-four predicate acts involved mailing fraudulent applications for liquor licenses and fraudulent sales tax returns. They occurred continuously over a six-year period, were related to the common goal of skimming money from the bars and restaurants while keeping Ianniello's interest in them hidden, and were similar, if not identical in method. There is no danger that Ianniello's RICO convictions rested on " 'isolated' or 'sporadic' criminal acts."

*Ianniello v. United States,* No. 92 Civ. 5562, at 4, 1993 WL 148975 (S.D.N.Y. May 5, 1993) (quoting *Indelicato,* 865 F.2d at 1383). No rational juror could have found that Ianniello committed this panoply of predicate acts without concluding that the acts were interrelated.

---

3. Ianniello cites *United States v. Long,* 917 F.2d 691, 697 n. 6 (2d Cir.1990) in support of retroactivity. But as Ianniello recognizes, *Long* was decided on direct rather than collateral review. *Long* did not determine retroactivity on collateral review.

This case thus differs from *United States v. Long*, 917 F.2d 691 (2d Cir.1990), which also involved a claim that failure to instruct on the RICO relatedness requirement amounted to reversible error. In *Long*, "relatedness of the predicate acts [was] particularly critical ... because only three of the alleged racketeering acts [fell] within the statute of limitations period," and those acts were "the most vulnerable to a claim of horizontal unrelatedness." *Id.* at 697. The "sparse" evidence of relatedness rendered prejudicial the failure to commit resolution of the issue to the jury. *Id.* at 698. Ianniello, by contrast, was found beyond a reasonable doubt to have committed forty-four predicate acts, all of which furthered the same cash-skimming scheme. A new trial is not necessary where evidence of the missing element of relatedness is so overwhelming, and where the jury's findings show beyond doubt that it must have concluded that the acts were interrelated.

■ Ianniello asserts that a court cannot constitutionally supply the missing factual element, because that is the province of the jury. *See Sullivan v. Louisiana*, — U.S. —, —, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993) ("[T]o hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee."). We do not think *Sullivan* precludes harmless error analysis in this case, for two reasons.

First, the Supreme Court avoided Ianniello's extreme position that a court never can supply a missing link. The Court used the example of a charge that erects a presumption regarding an element of an offense:

[T]he jury-instruction error in this case [ (failure to instruct on reasonable doubt) ] is quite different from the jury-instruction error of erecting a presumption regarding an element of the offense. A mandatory presumption—for example, the presumption that a person intends the ordinary consequences of his voluntary acts—violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense. But "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." And when the latter facts "are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed."

*Id.* (quoting *Rose v. Clark*, 478 U.S. 570, 580, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986) and *Carella v. California*, 491 U.S. 263, 271, 109 S.Ct. 2419, 2423, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring)).

Second, *Sullivan* concerned a failure to charge on reasonable doubt, which the Court found to be among a select few constitutional rights, the violation of which cannot be excused as harmless. *See id.* at —, 113 S.Ct. at 2083 (Rehnquist, C.J., concurring) ("[I]t is the rare case in which a constitutional violation will not be subject to harmless-error analysis."); *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (citing *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (unlawful exclusion of members of defendant's race from jury); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (right to public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (right to self-representation)); *Chapman v. California*, 386 U.S. 18, 23 n. 8, 87 S.Ct. 824, 828 n. 8, 17 L.Ed.2d 705 (1967) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (right to impartial judge)). *Cf. Long*, 917 F.2d at 697 (holding failure to instruct on relatedness insufficiently critical to be plain error).

■ Harmless error analysis is the rule rather than the exception, and courts may constitutionally play a guarded role in judging whether facts found by a jury are so conclusive on an ultimate factual issue—an issue undecided by the jury because of a faulty charge—that the error in the charge and resultant absence of an actual jury finding on the ultimate issue are harmless. *Pope v. Illinois*, 481 U.S. 497, 501–04, 107 S.Ct. 1918, 1921–23, 95 L.Ed.2d 439 (1987); *Rose*,

478 U.S. at 576–82, 106 S.Ct. at 3105–08. With exceptions for fundamental unfairness, "a conviction should be affirmed '[w]here a reviewing court can find that the record at trial established guilt beyond a reasonable doubt,'" *Pope*, 481 U.S. at 502–03, 107 S.Ct. at 1922 (quoting *Rose*, 478 U.S. at 579, 106 S.Ct. at 3106), and where "no rational juror" could conclude otherwise. *Id.* at 503, 107 S.Ct. at 1922. We find those conditions met in this case.

Affirmed.