**Stanley CAMING, Petitioner,**

v.

**UNITED STATES, Respondent.**

**No. 95 Civ. 0100 (SWK).**

United States District Court, S.D. New York.

June 14, 1995.

---

Jeffrey Samel & Associates, New York City by David Samel, for plaintiff.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City by Bruce G. Ohr, Asst. U.S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Petitioner Stanley Caming ("Caming") moves, pursuant to 28 U.S.C. § 2255, to vacate his judgment of conviction, convicting him of violating 31 U.S.C. § 5324, on the ground that the conduct for which he was convicted is no longer unlawful pursuant to the Supreme Court's decision in *Ratzlaf v. United States*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). For the reasons set forth below, Caming's motion is denied.

### BACKGROUND

On August 27, 1990, a grand jury indicted Caming on two counts arising out of an alleged money laundering scheme. Count One of the Indictment charged Caming with structuring currency transactions to avoid currency transaction reporting requirements, in violation of 31 U.S.C. §§ 5324(3)[1] and

---

**1.** Section 5324(3) makes it unlawful "for the purpose of evading the reporting requirements of section 5313(a) ... [to] structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324(3) (1994). Under section 5313(a) and the regulations promulgated thereunder, financial institutions must file a report with the Secretary of the Treasury for all cash transactions exceeding

5322(b).[2] Count Two charged Caming with causing or attempting to cause financial institutions to fail to file currency transaction reports, in violation of 31 U.S.C. §§ 5324(1) and 5322(b).[3]

In July 1991, Caming proceeded to trial. At trial, the Government presented evidence that Caming had created fictitious bank accounts and social security numbers, and used a post office box in furtherance of a scheme to launder approximately $700,000 over a sixteen-month period between 1988 and 1990. The proof at trial established that Caming had made nearly 100 deposits of cash or money orders into bank accounts at six different banks, and that each of the deposits was for an amount under $10,000. Testimony and documentary evidence established that the vast majority of the deposits were for amounts between $9,000 and $10,000.

The Government's witnesses included several bank employees who had dealt with Caming during the relevant time period. For example, Marcia Harding ("Harding") and Florence Melesky ("Melesky"), tellers at the Bank of New York (the "Bank"), testified that Caming had made numerous cash deposits in amounts over $9,000 into accounts under various names. Tr. at 148–49, 161–62. Bank operations manager Courtland Carter ("Carter") specifically recalled one instance in which Caming attempted to make two separate $9,000 deposits because he informed Caming at that time that a transaction report would have to be filed for the total deposit of $18,000. *Id.* at 65–66.

Carter also testified that he personally had posted three signs (the "Signs") inside the Bank, which read as follows:

## NOTICE TO CUSTOMERS

THE BANK OF NEW YORK is required by the BANK SECRECY ACT to report to the Department of the Treasury: depos-

its, withdrawals, exchanges of currency, or other payment or transfer, by, through, or to the bank involving more than $10,000 in currency.

It is illegal for any person: To cause or attempt to cause the bank to fail to file a report required under the BANK SECRECY ACT.

To cause or attempt to cause the bank to fail to file a report required under the BANK SECRECY ACT that contains a material omission or misstatement of fact.

To structure, attempt to structure or assist in structuring transactions in currency for the purpose of evading the reporting requirements under the BANK SECRECY ACT.

SUCH ACTIONS MAY BE REPORTED TO APPROPRIATE GOVERNMENTAL AUTHORITIES.

*Id.* at 66–69; Gov't Trial Exh. "49." Carter stated that two of the Signs were placed "in the tellers' area, one at each end of the tellers' cage . . . , facing the customer as the customer would stand in line looking at the tellers." Tr. at 67–68. Bank manager Janice Mattei Fischetti ("Fischetti") confirmed Carter's testimony, stating that she had viewed the Signs in the teller windows on a regular basis. *Id.* at 244. Fischetti testified that she specifically remembered the Signs because she had been ordered to move one that was partially blocking a Bank surveillance camera's view of a clock located on a far wall. *Id.* at 243, 246.

The Government also introduced into evidence several photographs taken by the Bank's surveillance cameras situated behind the teller area. *See* Gov't Trial Exhs. "14," "15" and "15a." Carter testified that these photos depict Caming looking at one of the Signs in the teller area. Tr. at 70–71.

---

$10,000. *See* 31 U.S.C. § 5313(a) (1994); 31 C.F.R. § 103.22(a) (1993).

**2.** Section 5322 sets forth criminal penalties for "willful[]" violations of section 5324. *See* 31 U.S.C. § 5322 (1994).

**3.** Under section 5324(1), it is unlawful "to cause or attempt to cause a domestic financial institu-

tion to fail to file a [required] report." 31 U.S.C. § 5324(1) (1994).

Section 5324 was recodified without substantive change such that subsections (1) and (3) are now designated (a)(1) and (a)(3) respectively. For convenience, the Court shall refer to the original codification as it appears in the Indictment.

At the conclusion of the evidence, Caming requested a jury instruction that the Government must prove that Caming knew that his conduct was unlawful. *See* Def.'s Req. to Charge Nos. 1, 2. The Court denied this request, however, and instead instructed the jury that "you do not need to find that [Caming] knew that [his conduct] was unlawful in order to find that he acted knowingly and willfully for the purposes of [the intent] element." Tr. at 611, 616. In reaching this decision, the Court relied on *United States v. Scanio,* 900 F.2d 485, 487–92 (2d Cir.1990), wherein the Second Circuit had held that the Government need not prove that a defendant knew that his conduct was illegal in order to establish criminal liability under section 5324.

On July 30, 1991, the jury found Caming guilty of both counts of the Indictment and, on December 23, 1991, the Court sentenced Caming to twenty-four months of incarceration, to be followed by a two-year term of supervised release, and a mandatory $100 special assessment. On June 29, 1992, the Second Circuit Court of Appeals affirmed Caming's conviction and sentence, holding *inter alia,* that the Court's instruction on the issue of intent was correct under the Second Circuit's ruling in *Scanio. United States v. Caming,* 968 F.2d 232, 238–41 (2d Cir.1992).

On January 11, 1994, the Supreme Court, in *Ratzlaf v. United States,* 114 S.Ct. at 663, overruled *Scanio,* instead holding that the Government is required to prove that the defendant acted with knowledge that his conduct was unlawful in order to sustain a conviction under section 5324. Caming now moves, pursuant to 28 U.S.C. § 2255, to vacate his judgment of conviction, contending that the conduct for which he was convicted is no longer unlawful under *Ratzlaf.*

## DISCUSSION

### I. Retroactivity

■ As a threshold matter, the Court must determine whether the Supreme Court's ruling in *Ratzlaf* applies retroactively in the context of a section 2255 motion.[4]

While several courts have applied *Ratzlaf* retroactively on direct appeal, *see, e.g., United States v. Gray,* 47 F.3d 1359, 1363 (4th Cir.1995); *United States v. Retos,* 25 F.3d 1220, 1230 (3rd Cir.1994); *United States v. Hollingsworth,* 27 F.3d 1196, 1219 n. 9 (7th Cir.1994); *United States v. Jones,* 21 F.3d 165, 172 (7th Cir.1994), few have confronted this issue in the context of a collateral attack of a conviction.

One court that has addressed this issue was the Tenth Circuit Court of Appeals in *United States v. Dashney,* 52 F.3d 298, 298–99 (10th Cir.1995). In *Dashney,* the Tenth Circuit reversed a lower court ruling which had dismissed a section 2255 motion on the ground that *Ratzlaf* did not apply retroactively after final sentence. In denying relief, the district court had relied on *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989), wherein the Supreme Court held that new constitutional rules of criminal procedure do not apply retroactively to cases that have become final prior to the new rule. The Tenth Circuit Court of Appeals distinguished *Teague,* however, finding *Ratzlaf* to be a "'substantive non-constitutional decision concerning the reach of a federal statute.'" *United States v. Dashney,* 52 F.3d at 299 (quoting *United States v. Shelton,* 848 F.2d 1485, 1489 (10th Cir.1988)). Specifically, the Tenth Circuit stated:

> What *Ratzlaf* did was articulate the substantive elements which the government must prove to convict a person charged under 5322(a) and 5324(3). That is, it explained what conduct is criminalized. This is a substantive change in the law mandating retroactivity because "a statute cannot mean one thing prior to the Supreme Court's interpretation and something entirely different afterwards."

*Id.* (quoting *United States v. Shelton,* 848 F.2d at 1489).

The Court finds *Dashney* persuasive. Specifically, the Court concludes that the Supreme Court's decision in *Ratzlaf* effectuated a change in the law by requiring the Government to prove an additional element to attain

---

4. The Court notes that the Government does not oppose retroactive application of *Ratzlaf* to Caming's section 2255 motion.

a conviction under section 5324. This definitional change thus requires that the petitioner receive an opportunity to challenge his conviction via collateral review.

Retroactive application of the instant petition is supported by several Second Circuit decisions. In *Ingber v. Enzor*, 841 F.2d 450, 453–55 (2d Cir.1988), for example, the Court determined that a new Supreme Court interpretation of the mail fraud statute, 18 U.S.C. § 1341, must be applied retroactively on a section 2255 motion. In particular, the Court found that, where a petition is based on a substantive change in law that was unavailable on direct appeal, retroactive application is necessary in order to avoid an unfair result. *Id.* at 454. Similarly, in *Ianniello v. United States*, 10 F.3d 59, 62 (2d Cir.1993), the Court determined that the petitioner was entitled to retroactive application of a change in law announced in *United States v. Indelicato*, 865 F.2d 1370, 1381 (2d Cir.) (en banc), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989), in order to avoid a "fundamental wrong: conviction for conduct that is not illegal." The present case similarly involves a change in law subsequent to final sentence and raises the specter of permitting a conviction to stand for conduct that since has been deemed lawful. *See also United States v. Akins*, 93 Cr. 327, 1994 WL 148712 at *2, 1994 U.S.Dist. LEXIS 5036, at **7–8 (N.D.Ill. Apr. 12, 1994) (addressing petitioner's section 2255 motion on the merits, in part, because a "change in law removing [a] class of conduct from [the] reach of criminal law applies retroactively on habeas review") (motion to vacate section 5324 conviction post-*Ratzlaf*) (citing *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974)). Accordingly, the Court finds that *Ratzlaf* applies retroactively to Caming's section 2255 claim.

## II. The Merits

▪ The Government argues that, despite the change in law rendered by *Ratzlaf*, the evidence at trial established beyond a reasonable doubt that Caming was aware that his conduct was illegal. The Court agrees.

▪ It is well-settled that a court may determine whether "facts found by a jury are so conclusive on an ultimate factual issue—an issue undecided by the jury because of a faulty charge—that the error in the charge and resultant absence of an actual jury finding on the ultimate issue are harmless." *Ianniello v. United States*, 10 F.3d at 64 (citing *Pope v. Illinois*, 481 U.S. 497, 501–04, 107 S.Ct. 1918, 1921–23, 95 L.Ed.2d 439 (1987); *Rose v. Clark*, 478 U.S. 570, 576–82, 106 S.Ct. 3101, 3105–08, 92 L.Ed.2d 460 (1986)); *see also Napoli v. United States*, 32 F.3d 31, 35–36 (2d Cir.1994) (affirming dismissal of section 2255 petition despite faulty jury instruction in light of overwhelming evidence). In deciding whether to affirm a conviction absent an actual jury finding, the court must evaluate whether the record at trial established guilt beyond a reasonable doubt. *Ianniello v. United States*, 10 F.3d at 65. If the court concludes that no rational juror could have concluded otherwise, then the faulty jury instruction is harmless error and the conviction must be affirmed. *Id.* at 64–65.

▪ In the case at hand, the Court finds that an instruction under the new law regarding the knowledge requirement, rather than the pre-*Ratzlaf* instruction given to the jury, would have led to the same result. The evidence presented at trial established beyond a reasonable doubt that Caming knew that he was illegally structuring transactions in order to evade the bank's reporting requirements. Thus, the Court finds that no reasonable jury could have found that Caming acted without the requisite knowledge that he was engaging in illegal conduct.

First, the Government presented evidence directly proving that Caming knew that his conduct was unlawful through the testimony of several Bank employees and the introduction of Bank surveillance photos. Specifically, Carter and Fischetti credibly testified that the Signs were posted in several locations throughout the Bank, including in the teller areas facing the customers.[5] Carter

---

5. Although Harding and Melesky could not recall seeing the Signs in the teller windows, Tr. at

153–54, 166–67, Fischetti testified that the tellers would not be aware of them because they nor-

testified further that one of the surveillance photos depicted Caming looking at one of the Signs during one of his transactions. Contrary to Caming's suggestion, the Court finds that no reasonable juror viewing the photographs could have concluded that Caming was not reading the Sign. As the Signs informed customers that structuring transactions to evade the Bank's reporting obligation was illegal, no rational juror could have found that Caming acted without knowledge that he was breaking the law by engaging in the structuring scheme.

Second, the Court finds that certain circumstantial evidence supports the conclusion that Caming acted with the requisite intent. *See Ratzlaf v. United States,* —— U.S. at —— n. 19, 114 S.Ct. at 663 n. 19 ("A jury may, of course, find the requisite knowledge on defendant's part by drawing reasonable inferences from the evidence of defendant's conduct."). Caming's scheme was complex, involving the use of a post office box and fictitious names, bank accounts and social security numbers. His attempt to disguise his activities through an elaborate network of bogus information undoubtedly was based on the knowledge that his conduct was unlawful. This circumstantial evidence, in conjunction with the direct evidence noted above, overwhelmingly established that Caming acted "willfully" under *Ratzlaf.* Accordingly, as the Court finds that no reasonable juror could have concluded that Caming did not know that his conduct was illegal, Caming's petition is denied.

### CONCLUSION

For the reasons set forth above, Caming's motion, pursuant to 18 U.S.C. § 2255, to vacate his conviction is denied.

SO ORDERED.

mally did not walk through the customer area.     *Id.* at 245.