David Reid DENNIS, Petitioner,

v.

UNITED STATES of America,
Respondent.

Nos. 3:96CV216–P.
(3:93CR150–08–P).

United States District Court,
W.D. North Carolina,
Charlotte Division.

Dec. 11, 1996.

Plaintiff, Pro Se.

James Sullivan, Charlotte, NC, for defendant.

## *ORDER*

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on the Petitioner's Motion To Correct, Set Aside Or Vacate Sentence Pursuant to 28 U.S.C. § 2255, filed June 5, 1996 ("Motion"). Be-

cause the Petitioner either "used" or "carried" a firearm during and in relation to a drug trafficking crime, the Court must deny Petitioner's Motion.

## I. PROCEDURAL BACKGROUND

The Petitioner was one of thirteen persons charged in a five count Bill of Indictment returned by a grand jury on August 23, 1993. The Petitioner was charged in Count One for violating 21, U.S.C. § 846 conspiracy to possess with the intent to distribute, and distributing marijuana in violation of 21, U.S.C. § 841(a)(1). In Counts Two and Three, the Government charged the Petitioner with using and carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

On November 18, 1993, the Petitioner entered pleas of guilty to Counts One and Two. Pursuant to a plea agreement, the Government dismissed Count Three at the time of Petitioner's sentencing.

On May 17, 1994, this Court sentenced the Petitioner to an active term of imprisonment of thirty (30) months on Count One and thirty (30) months on Count Two.

On September 15, 1995, this Court, pursuant to a motion by the Government under Rule 35 of the Federal Rules of Criminal Procedure, reduced the Petitioner's sentence to twenty-four (24) months on Count One and twenty-four (24) months consecutive on Count Two.

On June 5, 1996, the Petitioner filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence for his conviction under Count Two—using and carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

## II. FACTUAL BASIS

Evidence presented at the Petitioner's sentencing hearing included the offense conduct portion of the Petitioner's Pre–Sentence Report which stated that the Petitioner was part of a marijuana conspiracy in Gaston County, NC which had been in existence from October 1988 to January 1992. This report revealed that one of Petitioner's co-conspirators, Mr. Randy Gribble, had sold 400–700 kilograms of marijuana to the Petitioner during the course of the conspiracy, and on several occasions Gribble observed that the Petitioner displayed a .45 caliber pistol during the transactions.

In a written statement, Gribble related that in March of 1989, he met the Petitioner at the Petitioner's house where he distributed forty (40) pounds of marijuana to the Petitioner. Gribble further stated that when he delivered the marijuana to the Petitioner's house, the Petitioner paid him in the bedroom of the house where the Petitioner displayed a .45 caliber pistol on a chest of drawers in the bedroom. Gribble also stated that he delivered marijuana to the Petitioner at the Petitioner's residence in October 1988. On this occasion, Gribble observed the Petitioner in possession of a black .45 caliber semi-automatic pistol while Petitioner retrieved the money from a night stand in the Petitioner's bedroom. Gribble delivered fifty (50) pounds of marijuana to the Petitioner's residence in May 1989. When Gribble took the marijuana into Petitioner's bedroom, Gribble observed a black .45 caliber semi-automatic pistol displayed on a speaker in the bedroom.

## III. ARGUMENT

The Petitioner claims in this § 2255 petition that he is entitled to relief from his conviction under Count Two because he did not "use or carry" a firearm in violation of 18 U.S.C. § 924(c)(1). Specifically, the Petitioner argues that (1) the Government, Petitioner's counsel, and this Court misinterpreted the meaning of "use or carry" under § 924(c)(1) in light of the United States Supreme Court subsequent opinion in *Bailey v. United States,* — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); (2) the Petitioner relied on these misinterpretations when he pled guilty to the § 924(c)(1) offense; (3) the Petitioner's guilty plea was unknowing and involuntary; and (4) therefore, the Petitioner was denied due process under the Fifth Amendment to the United States Constitution. Because he was allegedly denied due process, the Petitioner requests the Court to declare the Petitioner's guilty plea of "use or carry" of a firearm in relation to a drug

trafficking crime under § 924(c)(1) invalid. The Court disagrees.

## IV. ANALYSIS

### A. *Retroactivity of Bailey*

#### 1. Davis v. United States *is Dispositive*

■ As an initial matter, the Court finds that *Bailey* should be given retroactive effect. *See Ianniello v. United States*, 10 F.3d 59 (2d Cir.1993). In *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the Supreme Court of the United States held that a prisoner in custody under a federal sentence for violation of the Constitution or laws of the United States may seek relief under § 2255 on the basis of an intervening change of law. *Davis*, 417 U.S. at 342, 94 S.Ct. at 2303. This Court sentenced the Petitioner under 18 U.S.C. 924(c)(1) on May 17, 1994. The Supreme Court of the United States decided *Bailey* on December 6, 1995. The Supreme Court's decision in *Bailey* substantially changed the analysis of "uses or carries a firearm" under 18 U.S.C. 924(c)(1). Hence, as to the Petitioner, *Bailey* is an intervening change in law regarding his conviction and sentence under 18 U.S.C. 924(c)(1). Therefore, the Petitioner may seek relief under § 2255 based on the intervening change in law announced in *Bailey*.

#### 2. *Applicability of* Teague v. Lane

■ The Court also finds that the United States Supreme Court's holding in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) is not applicable to § 2255 petitioner's request for relief due to an intervening change of law under a federal statute. Moreover, even if *Teague* were applicable to § 2255 petitioner's request for relief due to an intervening change of law

under a federal statute, the change in law in *Bailey* would fit into one of *Teague*'s two exceptions.

In *Teague*, the Supreme Court held that federal courts are barred from hearing habeas corpus petitions from state court convictions (§ 2254) that attempt to apply a new rule of criminal procedure that was not in existence at the time of the petitioner's conviction in state court. *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075. The Supreme Court limited its discussion to new federal constitutional rules of criminal procedure.[1] The *Bailey* decision changes federal criminal substantive law—a federal statute (18 U.S.C. 924(c)(1))—not federal criminal procedure. This Court's finding that *Teague* is inapplicable to a habeas corpus petition from a federal conviction due to an intervening change in federal substantive law is further buttressed by the fact that neither the Supreme Court's plurality nor dissenting opinions in *Bailey* mentioned the Supreme Court's holding in *Davis*. There can be no doubt that if the Supreme Court desired to overrule its decision in Davis, it could have done so. It did not.

Moreover, even if the *Teague* rule of nonretroactivity did apply to habeas corpus petitions from a federal conviction due to an intervening change in federal substantive law, the *Bailey* decision fits into one of *Teague*'s two exceptions.[2] Specifically, *Bailey* decriminalizes a class of conduct: mere storage of a firearm during and in relation to any crime of violence or drug trafficking crime. Thus, the Supreme Court's decision in *Bailey* has retroactive effect.

#### 3. *Effect of Petitioner's Guilty Plea*

■ Moreover, as the Government conceded, the cause and prejudice standard re-

---

**1.** One could argue that the holding in *Teague* would also bar a federal court from hearing habeas corpus petitions from federal court convictions (§ 2255) that attempt to apply a new rule of criminal procedure that was not in existence at the time of the petitioner's conviction in federal court. However, that question is not before this Court.

**2.** The Supreme Court enunciated two exceptions to the *Teague* rule of nonretroactivity for cases on collateral review.

First, a new rule should be applied retroactively if it places certain kinds of conduct beyond the power of the criminal law-making authority to proscribe. Second, a new rule should be applied retroactively if it requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty.'
*Teague*, 489 U.S. at 307, 109 S.Ct. at 1073 (citations omitted).

quired of a petitioner who pleaded guilty, announced in *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), is inapplicable to this case because the "actual innocence" exception enunciated in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (*see United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1994)) is applicable to a § 924(c) violation under *Bailey*.

### B. "Use" Prong

■ In *Bailey*, the Supreme Court addressed "whether evidence of the proximity and accessibility of a firearm to drugs or drug proceeds is alone sufficient to show 'use' of a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1)." *Id.*, —— U.S. at ——, 116 S.Ct. at 503.[3] The Supreme Court held that "[t]o sustain a conviction under the 'use' prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." *Id.*, at ——, 116 S.Ct. at 509. The Supreme Court then found that the facts in *Bailey* could not support a conviction under the "use" prong of § 924(c)(1) and reversed the judgments. However, the Court remanded to determine whether the "carry" prong could sustain the convictions.

In its decision, the Supreme Court conducted a detailed analysis of the use prong of § 924(c)(1). First, the Court explained that "use" and "carry" were not redundant and had separate meanings.

We assume that Congress used the two terms because it intended each term to have a particular, nonsuperfluous meaning. While a broad reading of "use" undermines virtually any function for "carry," a more limited, active interpretation of "use" pre-

serves a meaningful role for "carries" as an alternative basis for a charge. Under the interpretation we enunciate today, a firearm can be used without being carried, e.g., when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction.

*Id.*, at ——, 116 S.Ct. at 507. Thus, it is irrefutable that "use" and "carry" offer two alternatives for violating § 924(c)(1).

After a detailed analysis of the legislative history of the statute, the Court stated that, for the purposes of § 924(c)(1), "use" means "active employment." *Id.*, at ——, 116 S.Ct. at 508. The Court then further defined "active employment" with examples:

The active-employment understanding of "use" certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm. We note that this reading compels the conclusion that even an offender's reference to a firearm in his possession could satisfy § 924(c)(1). Thus, a reference to a firearm calculate to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious and forceful presence of a gun on a table can be a "use." . . .

. . . If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not "used."

*Id.*, at ——, 116 S.Ct. at 508.[4]

■ Hence, it is clear that if a firearm is not disclosed or mentioned, it is not "used." However, a firearm is "used" if it is "on display during a transaction." *Id.*, at ——, 116 S.Ct. at 507.

---

3. *Bailey* consists of two consolidated cases: *Bailey v. United States* and *Robinson v. United States*. Bailey was arrested in his car and the firearm was found in the car's truck along with some cocaine. Robinson's firearm was found pursuant to a search warrant in a locked trunk in her bedroom.

4. The Supreme Court noted that its "active-employment reading of 'use'" would restrict the scope of § 924(c)(1). *Bailey*, at ——, 116 S.Ct. at 509. However, the Court made it clear that

*Bailey* only addressed the "use" prong of § 924(c)(1)—not the "carry" prong.

"While it is undeniable that the active-employment reading of 'use' restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs. The 'carry' prong of § 924(c)(1), for example, brings some offenders who would not satisfy the use prong within the reach of the statute."

*Id.*

Turning now to the facts under Petitioner's guilty plea, the Court is confident that the Petitioner "used" a firearm during a transaction in violation of § 924(c)(1). A co-conspirator stated that, on at least three occasions, the Petitioner displayed a black .45 caliber semi-automatic pistol while the co-conspirator delivered marijuana to the Petitioner in the Petitioner's bedroom. On at least one occasion, the Petitioner was in possession of the firearm when displayed to the co-conspirator. Therefore, the Petitioner "used" a firearm during and relating to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

## C. *"Carry" Prong*

The Supreme Court noted that its "active-employment reading of 'use' " would restrict the scope of § 924(c)(1). *Id.,* at ——, 116 S.Ct. at 509. However, a careful reading of *Bailey* shows that a firearm that has not been "used" may nonetheless have been "carried" and therefore sustain a conviction under § 924(c)(1). The Court made it clear that *Bailey* only addressed the "use" prong of § 924(c)(1)—not the "carry" prong.

> While it is undeniable that the active-employment reading of 'use' restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs. The 'carry' prong of § 924(c)(1), for example, brings some offenders who would not satisfy the use prong within the reach of the statute.

*Id.*

In determining what the word "carry" means as used in § 924(c)(1), it must be given its "ordinary and natural" meaning. *Cf. Bailey,* at ——, 116 S.Ct. at 506. This Court, like the Supreme Court in *Bailey,* will turn to Black's Law Dictionary. *Id.; see also, Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).

▆▆▆ Black's defines "carry" as "[t]o bear, bear about, sustain, transport, remove, or convey. To have or bear upon or about one's person, as a watch or weapon; locomotion not being essential." Applying this definition to § 924(c)(1), it is clear that any person who transports a firearm "carries" it

within the meaning of the statute. Moreover—"locomotion not being essential"—a person who has a firearm "on or *about* " his person also "carries" it in violation of the statute. Thus, a person who has a firearm immediately accessible and within close proximity to his body—even if that firearm is not on his body—"carries" that firearm.

It is clear that Congress intended 924(c)(1) to be a powerful and widely applicable law aimed at controlling the increasing proliferation of guns used in connection with drug trafficking in this country—"§ 924(c)(1)'s language sweeps broadly." *Smith,* 508 U.S. at 229, 113 S.Ct. at 2054. In the words of the Fourth Circuit:

> The statute is obviously intended to discourage and punish the deadly violence too often associated with drug trafficking. Such violence can readily occur when drug traffickers attempt to protect valuable narcotic supplies still in their possession or attempt to stop law enforcement officials from disrupting intended transactions. Section 924(c) ought not be interpreted so narrowly as to exclude such dangerous situations.

*United States v. James,* 834 F.2d 92, 93 (4th Cir.1987). This Court's reading of "carry" as used in § 924(c)(1) is consistent with the important objective of the Act, the ordinary meaning of the words used in the Act, and the Supreme Court's interpretation of "use" in *Bailey.*

Moreover, this Court's reading of the statute does not reduce "carrying" a firearm to simple possession of a firearm. A person may possess a firearm that is neither transported nor accessible and proximate during his drug offense—for example a rifle in a locked gun cabinet—without violating the Act. Such possession clearly would not qualify as "carrying."

Likewise, this reading of "carry" is not "of such breadth that no role remains for" the word "use." *Cf. Bailey,* —— U.S. at ——, 116 S.Ct. at 507. That is, a person could "use" a firearm without "carrying" it. For example, "reference to a firearm in [a defendant's] possession" yet not proximate to him would be "use" while it would not be "carry." *Id.,* at ——, 116 S.Ct. at 508. Thus, this Court's

reading of "carry" does not render "use" mere statutory surplusage.

Finally, this Court's reading of "carry" is largely consistent with the holdings of other courts that have decided the meaning of "carry" as used in § 924(c)(1). *See, e.g., United States v. Freisinger,* 937 F.2d 383 (8th Cir. 1991) ("carry" includes to carry in a vehicle) (citing *United States v. Cardenas,* 864 F.2d 1528 (10th Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989)); *United States v. Pearce,* 912 F.2d 159 (6th Cir.1990) (defendant "carried" firearm when "the firearm was under the defendant's control and readily accessible") (citing *United States v. Birmley,* 529 F.2d 103, 107 (6th Cir.1976)); *United States v. Joseph,* 892 F.2d 118 (D.C.Cir.1989) ("When a person 'has present ability to exercise dominion and control over' a firearm and further has that firearm 'within easy reach and available to protect him during his ongoing [drug trafficking] offense' he has rather plainly committed the act Congress intended to preclude by the passage of the statute.") (quoting *United States v. Evans,* 888 F.2d 891, 895 (D.C.Cir.1989)); *United States v. Power,* 881 F.2d 733 (9th Cir.1989) (a defendant carries a firearm "if the firearm is within the possession or control of a person who commits an underlying crime ...") (citing *United States v. Stewart,* 779 F.2d 538 (9th Cir.1985)); *United States v. Feliz-Cordero,* 859 F.2d 250 (2nd Cir.1988) ("a person cannot be said to 'carry' a firearm without at least a showing that the gun is within reach during the commission of the drug offense") (citing *United States v. Brockington,* 849 F.2d 872 (4th Cir. 1988)). Because these cases interpret "carry"—not "use"—they survive *Bailey* without alteration.

 Turning now to the facts under Petitioner's guilty plea, the Court is confident that the Petitioner "carried" a firearm during a transaction in violation of § 924(c)(1). A co-conspirator stated that, on at least three occasions, the Petitioner displayed a black .45 caliber semi-automatic pistol while the co-conspirator delivered marijuana to the Petitioner in the Petitioner's bedroom. On at least one occasion, the Petitioner was in possession of the firearm when displayed to and observed by the co-conspirator. Therefore, the Petitioner "carried" a firearm during and relating to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

## V. CONCLUSION

In sum, the Court finds that the Petitioner "used" or "carried" a firearm in violation of 18 U.S.C. § 924(c)(1) and his conviction must be sustained. This petition will be denied accordingly.

**NOW, THEREFORE, IT IS ORDERED** that the Petitioner's Motion To Vacate, Set Aside, Or Correct Sentence and the relief requested therein be, and hereby is, **DENIED.**

The Court will file a judgment simultaneously herewith dismissing this action.

The Clerk is directed to certify copies of this Order to the Petitioner and the United States Attorney.