**UNITED STATES of America, Appellee,**

v.

**Farid ALI, Defendant–Appellant.**

**No. 1720, Docket 94–1600.**

United States Court of Appeals,
Second Circuit.

Argued June 23, 1995.

Decided Oct. 23, 1995.

As Amended Jan. 9, 1996.

Steven M. Statsinger, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York City, for Defendant–Appellant.

Faith Gay, Assistant United States Attorney, Brooklyn, New York (Zachary W. Carter, United States Attorney, Eastern District of New York, Susan Corkery, Assistant United States Attorney, Brooklyn, New York, of counsel), for Appellee.

Before: KEARSE, ALTIMARI and PARKER, Circuit Judges,

PARKER, Circuit Judge:

Defendant Farid Ali appeals from a judgment entered on October 13, 1994 in the United States District Court for the Eastern District of New York following his conviction by jury of three crimes: (1) attempting to export shotguns without a license, in violation of 50 U.S.C.App. § 2410(a); (2) delivering firearms to a common carrier for transportation without notice to the carrier, in violation

of 18 U.S.C. § 922(e); and (3) making a false statement to a customs agent, in violation of 18 U.S.C. § 1001.

On appeal, defendant argues (1) that the court (Sterling Johnson, Jr., J.) should have granted his motion to suppress statements he made to customs officials as obtained in violation of *Miranda;* (2) that the court (Joanna Seybert, J.) erred by not instructing the jury that "willfulness" is an element of the offense charged in count 2; (3) that the false statement conviction must be reversed under the "exculpatory no" doctrine; and (4) that the false statement conviction must be reversed because the statements at issue were not material.

We hold that the district court applied the wrong legal standard in ruling on defendant's motion to suppress, and we remand for a new hearing on that motion. Because the statements at issue in the suppression hearing were used as evidence to obtain convictions on all three counts, we also briefly address defendant's remaining arguments because the district court will revisit these issues if its reconsideration of the suppression motion results in a new trial.

## BACKGROUND

The uncontested testimony at the suppression hearing held on August 16 and 23, 1993 reveals the following. In February 1993, a customs inspector at John F. Kennedy Airport in New York City was conducting a routine x-ray examination of luggage to be boarded on Pakistan International Airlines (PIA) Flight 724. The inspector, Sikes Reese, discovered shotguns in certain luggage checked under defendant's name. Customs agents then inquired with PIA and determined that Ali had not declared that he was transporting weapons, as required by law.

Reese and six other customs officials, five in uniform with weapons visible, collected at the flight's boarding gate to question Ali. After identifying him, officers asked for and obtained Ali's passport, airline ticket, and boarding pass. Ali was "taken aside," away from the line of boarding passengers, to an adjacent corridor or "jetway." He was not given *Miranda* warnings at this time.

Asked at the suppression hearing whether Ali was "free to go" after the agents took his documents and determined his identity, Reese stated, "No, he was not." The testimony of another agent, Michael Karcher, was more equivocal (and less forthright) on this point:

Q. Was this defendant Ali at the moment that he exhibited a boarding pass with his name on it, was he free to proceed as he pleased or did not please, or was he under the control or detention of either yourself, Reese and or all of the other men . . .?

A. He was asked to step aside and then an interview was conducted.

MR. HONIG [defense counsel]: If your Honor pleases, I ask that the question be answered as it is asked.

THE COURT: Was the defendant either arrested or detained at the moment you pulled him out of the line?

THE WITNESS: He wasn't arrested.

Q. I think if you listen to his Honor's question, he asked was he arrested or detained. What is your answer to the full question, please?

A. He was not allowed to proceed to board the airline. He was asked to step aside and speak to the inspector and myself.

Q. And was he therefore detained by you, Reese or the other members of this investigation?

A. You are describing detained. Was he detained from boarding the flight, he was.

Q. Could he have, if he chose, moved away from the ambit of those people that segregated him and gone out into the passenger area outside the jetway and ramp?

A. He could have demanded to if he wanted to.

Q. And tell me, sir, what would you and those other earnest gentlemen have done if he would have attempted to?

MS. FLEISCHMAN [prosecutor]: Objection, your Honor.

THE COURT: I will allow it.

A. We wouldn't have allowed him to run away.

. . . .

THE COURT: . . . In your mind was he detained?

THE WITNESS: He wasn't allowed to board the aircraft and he was being interviewed by us.

Q. And he would not have been allowed to leave that jetway and go back out into the open passenger area of that Pakistani terminal; am I correct?

A. I don't believe so, no.[1]

With the other six officers in the immediate area, Reese began to interview Ali, first confirming that Ali understood English. Reese then explained the currency reporting requirements and gave Ali a currency declaration form, which Ali completed. Next, Reese informed Ali about other export regulations, in particular, that a license was required to bring certain items, including firearms and computer equipment, out of the country. Reese asked Ali whether he was transporting any of these items. Ali answered "no." After further explanation of which commodities would require a license, Reese again asked if Ali had any in his luggage, and Ali again answered "no." Reese inquired how much luggage he was transporting, and Ali answered that he had three suitcases and one box. Asked what his luggage contained, Ali answered, "some clothing, some liquor, a VCR." Ali also stated that he had packed the three suitcases but he had not packed the box. According to the agents' testimony, Ali then admitted that he had sixteen shotguns in the luggage. He was thereafter arrested, brought to the customs building and read his *Miranda* rights for the first time. Approximately fifteen minutes elapsed from the time the officials segregated Ali from other passengers until the arrest.

### DISCUSSION

1. *The Motion to Suppress*

■ Following a review of the evidence as stated above, the district court concluded that the officers had reasonable suspicion of criminal activity, thus warranting an investigatory stop under *Terry v. Ohio*, 392 U.S. 1,

1. In context, this answer most likely was meant to indicate agreement with counsel's assertion, that is, that Ali would not have been allowed to leave the jetway.

88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Without further explanation, the court then held:

> The questioning of the defendant during his detention on the jetway did not constitute custodial questioning sufficient to trigger *Miranda* protections. As made clear at the hearings, one of the goals of the agents [sic] questioning was a determination as to whether defendant held a valid export license. Only when defendant admitted that he had no such license was he taken into custody. Therefore, the statements made by defendant while in the jet way were but were [sic] pre-arrest statements law fully [sic] obtained.
>
> The statements are not the subject of an unlawful interrogation and therefore defendant's motion to suppress these statements is denied.

*United States v. Ali*, No. 93 CR 0281, slip op. at 6–7 (E.D.N.Y. Sept. 27, 1993).

 The district court's ruling on custody is reviewed in this Circuit for "clear error." *United States v. Mussaleen*, 35 F.3d 692, 697 (2d Cir.1994). "Moreover, after a court has denied a motion to suppress, we view the evidence in the light most favorable to the government." *Id.*

Initially, we note that the evidentiary record does not support the district court's finding that defendant admitted before his arrest that he had no export license for the weapons. Rather, Ali first stated that his luggage did not contain the sorts of items for which a license is required, and then admitted that his luggage did contain firearms. More problematic, however, is the court's legal reasoning: the court seems to have concluded that the encounter did not constitute custodial interrogation at least in part because (1) the stop was justified under *Terry* and (2) one of the goals of the agents was to determine whether defendant held a valid export license. Neither reason supports the court's conclusion.

 *Miranda* warnings are required prior to the interrogation of a suspect who is in custody. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). "By custodial interrogation, we mean questioning initiated by law enforcement offi-

cers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* Defendant argues on appeal both that he was in custody at the time he was questioned, and that the questions constituted interrogation under *Miranda* and its progeny. The government disputes only the custody issue, apparently conceding that what occurred was interrogation.

 "The test for determining whether [a suspect] was in custody is 'whether a reasonable person in the defendant's position would have understood himself to be "subjected to the restraints comparable to those associated with a formal arrest." '" *United States v. Mussaleen*, 35 F.3d at 697 (quoting *United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir.1992) (in turn quoting *Berkemer v. McCarty*, 468 U.S. 420, 441, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984))). "An accused is in 'custody' when, in the absence of an actual arrest, law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave." *Campaneria v. Reid*, 891 F.2d 1014, 1021 n. 1 (2d Cir.1989), *cert. denied*, 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991). The Supreme Court has recently reaffirmed that the test is objective: "Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, ── U.S. ──, ──, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994) (per curiam). The Court reiterated the principle stated earlier in *Berkemer v. McCarty* that " 'the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation.' " *Id.* (quoting *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151).[2]

> In sum, an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in

---

**2.** Actually, *Berkemer* referred to the suspect's "position," not his "shoes."

that position would perceive his or her freedom to leave.

*Id.,* —— U.S. at ——, 114 S.Ct. at 1530.

The proper inquiry is thus whether a reasonable person in Ali's shoes would have felt free to leave under the circumstances. The "goals" of the agents' questions (a factor upon which the district court relied), to the extent they were communicated or evident to the defendant at all, do not support the view that defendant should have felt free to leave; to the contrary, the questions suggested that the officers already knew Ali had weapons in his baggage and that they were not about to let him go at all. The interview must, of course, be considered in the context of the surrounding circumstances: Ali was asked to step away from the boarding area, his travel documents were removed, and he was surrounded by seven officers with visible handguns.

 Further, whether the "stop" was permissible under *Terry v. Ohio* (another factor upon which the court apparently relied) is irrelevant to the *Miranda* analysis. *Terry* is an "exception" to the Fourth Amendment probable cause requirement, not to the Fifth Amendment protections against self-incrimination. *See Terry,* 392 U.S. at 27, 88 S.Ct. at 1883 ("[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime."). The fact that the seizure and search of a suspect comports with the Fourth Amendment under *Terry* simply does not determine whether the suspect's contemporaneous oral admissions may be used against him or her at trial. A *Terry* stop may turn into custodial detention. *See United States v. Hooper,* 935 F.2d 484, 494 (2d Cir.) ("If the intrusion becomes excessive, it ceases to be a *Terry* type detention that can be justified based on reasonable suspicion and instead becomes a seizure that requires a showing of probable cause."), *cert. denied,* 502 U.S. 1015, 112 S.Ct. 663, 116 L.Ed.2d 754 (1991).

The district court invoked an inapplicable legal standard in ruling on Ali's motion to suppress. We express no view as to whether Ali's pre-arrest statements ought to be suppressed when analyzed under the correct standard, as set forth in *Stansbury v. California;* that is a matter we leave in the first instance for the district court. Accordingly, the matter is remanded for reconsideration of defendant's motion to suppress.

We now turn briefly to address defendant's remaining arguments on appeal.

### 2. The Failure to Charge Willfulness

 18 U.S.C. § 922(e) makes it unlawful to deliver a firearm to a carrier for transportation in interstate commerce without notice to the carrier. Willfulness is an element of this crime. 18 U.S.C. § 924(a)(1)(D); *see also United States v. Collins,* 957 F.2d 72, 74 (2d Cir.), *cert. denied,* 504 U.S. 944, 112 S.Ct. 2285, 119 L.Ed.2d 210 (1992). To prove willfulness, the government need not establish that the defendant had specific knowledge of the statute he is accused of violating, nor that he had the specific intent to violate the statute. Rather, the element of willfulness is "meant to be read broadly to require only that the government prove that the defendant's conduct was knowing and purposeful and that the defendant intended to commit an act which the law forbids." *Id.* at 76. The district court did not include this element in the jury instructions.

Although the parties dispute whether defendant raised this issue in the district court with the specificity necessary to preserve the issue for appellate review, and whether the error is harmless, there is no question that the omission of the willfulness element from the jury charge was error. If a new trial is granted pursuant to reconsideration of defendant's suppression motion, the jury should be appropriately instructed on the elements of count 2 upon remand.[3]

### 3. The "Exculpatory No" Doctrine

 Count 3 of the indictment charges the defendant with knowingly and willfully

---

**3.** We reject as frivolous defendant's additional contention that the evidence of willfulness was insufficient as a matter of law. The jury could readily infer from the evidence that Ali intended to transport weapons in his luggage and intended not to inform airline authorities of the fact.

making a false or fraudulent statement in a matter within the jurisdiction of the United States Customs Service, in violation of 18 U.S.C. § 1001, "in that the defendant stated and represented that he was not transporting any articles requiring licenses, to wit, firearms, when in fact, as he then and there well knew and believed, he was transporting articles requiring licenses." [4]

■■■ Defendant argues that the only evidence to support count 3 was his simple denials when asked whether he was transporting licensed articles, and that a conviction under 18 U.S.C. § 1001 cannot rest solely on simple denials of culpability. This doctrine, known as the "exculpatory no" doctrine, "holds that the second element of a § 1001 offense—the making of a statement—is lacking if the defendant merely answers an inquiry in the negative rather than by affirmatively supplying information." *United States v. Bakhtiari*, 913 F.2d 1053, 1061 (2d Cir.1990), *cert. denied*, 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991).

The doctrine is recognized in various forms in some circuits, *see, e.g., Moser v. United States*, 18 F.3d 469, 473 (7th Cir.1994) ("exculpatory no" exception recognized in "a very narrow and limited fashion"), but its availability in this Circuit has not been conclusively determined. In *Bakhtiari*, it was unnecessary to reach the issue; we noted, however, "that we have previously ruled that even 'if we did adopt [the "exculpatory no" doctrine] we would construe it narrowly, ruling that any statement beyond a simple "no" does not fall within the exception.'" 913 F.2d at 1061–62 (quoting *United States v. Capo*, 791 F.2d 1054, 1069 (2d Cir.1986), *rev'd in part on other grounds*, 817 F.2d 947 (2d Cir.1987) (en banc)). In an earlier decision, we held that the "exculpatory no" doctrine did not protect a defendant who falsely answered "no" to a question on a customs declaration form, asking whether he was carrying over $5000, where the government had explained the currency reporting requirement to the defendant. *United States v. Grotke*, 702 F.2d 49, 53 (2d Cir.1983).

The evidence in this case established that Agent Reese had explained to Ali, before Ali made the false statements, that a license was required to export firearms. Furthermore, Ali did more than simply utter a simple denial. After denying that he was transporting regulated articles, he asserted that his luggage contained "some clothing, some liquor, a VCR." In the context of the questioning—Does your luggage contain any licensed commodities, such as firearms?—defendant's answer was a knowing and affirmative misrepresentation, sufficient to support a conviction for making a false or fraudulent statement to a government agent. For these reasons, the "exculpatory no" exception, even if it were available in appropriate circumstances in this Circuit, does not apply to these facts and does not bar defendant's retrial on count 3 (in the event the district court's reconsideration of Ali's suppression motion results in a new trial).

### 4. *Materiality of Statements*

■■■ Defendant further challenges his conviction on count 3 on the ground that the false statements he uttered were not material. He contends that the statements did not have a tendency to influence the customs agents' decisions, in light of his almost immediate admission that his luggage contained firearms.

Defendant did not raise the issue of materiality at trial, and did not request a jury instruction on the issue. Indeed, at the time of trial, it was the settled law of this Circuit that materiality was not an element of the offense of making a false statement to a government official in violation of 18 U.S.C. § 1001. *See United States v. Elkin*, 731 F.2d 1005, 1009 (2d Cir.), *cert. denied*, 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984).

Following briefing in this case, however, the Supreme Court decided *United States v. Gaudin*, —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which unanimously held that the element of materiality under § 1001 must be determined by the jury and not the court. *Id.* at ——, 115 S.Ct. at 2320. The Court did not squarely address *whether* materiality is an element of the offense; the government had conceded that point. *Id.* at ——, 115 S.Ct. at 2313 ("It is uncontested

---

**4.** Prosecution of count 3, of course, cannot proceed if the district court on remand grants the motion to suppress.

that conviction under [§ 1001] requires that the statements be 'material' to the Government inquiry, and that 'materiality' is an element of the offense that the Government must prove."). Nonetheless, the Court's focus on the constitutional role of the jury to decide whether the offending statements are material is premised on its implicit view that materiality is indeed an element of the offense. *Elkin* and kindred decisions are no longer good law on this point.

If count 3 is retried, defendant is entitled to a jury charge on the element of materiality, in accordance with the precepts of *Gaudin.*

### CONCLUSION

The case is remanded for reconsideration of defendant's suppression motion. If, in applying the standard articulated in this opinion, the district court rules that defendant's gate-side statements should be suppressed, a new trial should be granted on all counts of conviction.

So ordered.