Paul A. BILZERIAN, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 1683, Docket 96–2920.

United States Court of Appeals,
Second Circuit.

Argued June 23, 1997.

Decided Sept. 30, 1997.

---

**238**

Paul A. Bilzerian, Pro se, Tampa, FL, for Plaintiff–Appellant.

Robert B. Buehler, Assistant United States Attorney for the Southern District of New York, New York City, for Defendant–Appellee.

Before: MESKILL, McLAUGHLIN, Circuit Judges, and LASKER, District Judge.*

McLAUGHLIN, Circuit Judge:

Plaintiff appeals from a judgment of the United States District Court for the Southern District of New York (Ward, J.) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. We agree with the district court and, therefore, affirm.

## BACKGROUND

During 1985 and 1986, Paul A. Bilzerian was involved in an ongoing pattern of fraudulent stock transactions. The transactions involved the stock of four companies: Cluett, Peabody and Company, Inc. ("Cluett"), Hammermill Paper Company ("Hammermill"), H.H. Robertson Company ("Robertson"), and Armco Steel ("Armco").

In general, Bilzerian concealed his ownership of stock in these companies either by "parking" or "accumulating" the stock at a registered broker-dealer. In so doing, Bilzerian sought to evade SEC disclosure requirements and to avoid tax liability. Bilzerian also engaged in other criminal activities such as submitting false documentation to the SEC, filing false tax returns with the IRS, and exchanging fraudulent invoices with his stockbroker to further his scheme.

In particular, the transactions that involved Cluett stock included misrepresenting the source of funds used to buy Cluett common stock, secretly accumulating the stock through a nominee, and misrepresenting the

---

* The Honorable Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation.

nature of the purchase to the SEC. On a Schedule (D) form filed with the SEC Bilzerian represented that the Cluett stock he owned was purchased with "personal funds," when in fact the funds were raised from other investors with whom Bilzerian had a profit-sharing and guarantee-against-loss agreement. Bilzerian also failed to reveal the accumulation of Cluett stock to the SEC as well as his intention to buy the company.

Similarly, the Hammermill transactions involved misrepresentations to the SEC about the source of funds Bilzerian used to buy the Hammermill stock and the secret accumulation of Hammermill stock through a broker.

As for the Robertson and Armco transactions, Bilzerian engaged in "stock parking" shares of the two companies. This means that Bilzerian "sold" his stock in Robertson and Armco to a broker who held it for 30 days with the understanding that Bilzerian would buy the stock back for the purchase price plus interest and commissions. By this device, the broker became the "owner" of the stock in name only and was under no market risk. Through this "stock parking" scheme, Bilzerian could claim a tax loss from the "sale" of the stock, while never giving up his ownership.

In June 1989, Bilzerian was indicted in the United States District Court for the Southern District of New York (Ward, *J.*) on two counts of securities fraud in violation of 15 U.S.C. § 78j(b), five counts of making false statements to the Securities and Exchange Commission (SEC) in violation of 18 U.S.C. § 1001, and two counts of conspiracy to commit specific offenses and to defraud the SEC and Internal Revenue Service (IRS) in violation of 18 U.S.C. § 371. The securities fraud and false statement counts were based on the Cluett and Hammermill transactions. The conspiracy counts involved the Armco and Robertson transactions.

When Bilzerian was tried, a conviction under 18 U.S.C. § 1001 could be sustained if a jury found the conduct at issue met the requirements of either 18 U.S.C. § 1001(a)(1) or (a)(2). At the time, the law in this Circuit was that, while materiality was an element of the offense for a conviction under 18 U.S.C. § 1001(a)(1), it was an issue to be decided by

the judge as a matter of law. A conviction under 18 U.S.C. § 1001(a)(2), on the other hand, did not require any finding of materiality at all. Accordingly, the district judge made a finding of materiality, as a matter of law, with respect to 18 U.S.C. § 1001(a)(1) and did not instruct the jury that materiality was an element of an offense under 18 U.S.C. § 1001(a)(2).

The jury returned a verdict convicting Bilzerian of all the counts. The jury also completed a special verdict form for the securities fraud counts finding that all the components of securities fraud were proven beyond a reasonable doubt, including that Bilzerian made an untrue statement of material fact or omitted to state a material fact. We affirmed Bilzerian's conviction. *See United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991).

In February 1995, Bilzerian filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in the United States District Court for the Southern District of New York (Ward, *J.*) alleging that: (1) he was denied effective assistance of counsel; (2) the trial judge was biased and exhibited that bias during trial; (3) the jury instructions on reasonable doubt were deficient; (4) some of the counts of the indictment were multiplicitous; and (5) the conspiracy charges were invalid as a matter of law. Several months later, after the Supreme Court's decision in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), and our decision in *United States v. Ali*, 68 F.3d 1468 (2d Cir.1995), Bilzerian moved to amend his habeas petition to allege that his conviction should also be set aside in light of these cases. *Gaudin* had held that if materiality is an element of the offense of making false statements under 18 U.S.C. § 1001(a)(1) or (a)(2), a finding of materiality must be made by the jury and not the judge. *Ali* had overruled our precedents and held that materiality is an element of the offense of making false statements under both § 1001(a)(1) and (a)(2). The district court granted Bilzerian's motion to amend. Bilzerian also filed a motion that Judge Ward recuse himself from deciding the habeas petition.

The District Court then denied Bilzerian's recusal motion and denied his habeas petition without a hearing. Bilzerian now appeals, reasserting all the arguments he raised below.

## DISCUSSION

Bilzerian raises several issues on appeal, only two of which warrant extended discussion—(a) whether his conviction under 18 U.S.C. § 1001 should be reversed because of the Supreme Court's decision in *United States v. Gaudin* and (b) whether Bilzerian's conviction under 18 U.S.C. § 1001 should be reversed in light of this Court's holding in *United States v. Ali*. Both questions involve whether the holdings of either case should be applied retroactively and even if so, whether the error is harmless. The remaining issues are resolved by a summary order filed herewith. *See Bilzerian v. United States*, 96–2920, 1997 WL 603470.

### A. *United States v. Gaudin*

■ Bilzerian's central point is that his conviction under 18 U.S.C. § 1001 must be reversed under *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which held that whether a fact is material under § 1001 is a jury question. *Id.* at 506, 115 S.Ct. at 2311–12. Before *Gaudin*, most circuits, including this one, had held that the materiality determination was to be made, as a matter of law, by the judge. *See United States v. Elkin*, 731 F.2d 1005, 1009 (2d Cir.1984). *Gaudin* based its holding on the Fifth and Sixth Amendments' requirement that to convict a defendant a jury must make a finding on every element of the offense. *See Gaudin*, 515 U.S. at 522–24, 115 S.Ct. at 2320. Bilzerian contends that because his jury did not render a verdict on the element of materiality in the § 1001 counts, his conviction on those counts must be vacated.

■ While it is undisputed that the jury did not make a finding of materiality on the § 1001 counts, we must first determine, as a threshold matter, whether the *Gaudin* rule applies retroactively on collateral review. Under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), new rules of constitutional criminal procedure—as distinguished from new rules of criminal substantive law—are generally not applied retroactively on habeas review. A "new rule" is a rule that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070. A new rule announces a result that was not dictated by precedent at the time the petitioner's conviction became final. *Id.* A rule is a "new rule" unless "a ... court considering the petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution," *Gray v. Netherland*, —— U.S. ——, ——, 116 S.Ct. 2074, 2083, 135 L.Ed.2d 457 (1996)(quoting *Saffle v. Parks*, 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990)).

Under this standard, *Gaudin* is a new rule. It was not dictated by precedent at the time Bilzerian's conviction became final. Prior to *Gaudin*, we had categorically held that materiality under § 1001(a)(1) was a question of law to be decided by the judge. *See Elkin*, 731 F.2d at 1009. Indeed, every federal appeals court, except the Ninth Circuit, had agreed with us. *Gaudin*, 515 U.S. at 526–27, 115 S.Ct. at 2322. A court in the Second Circuit, deciding the issue at the time of Bilzerian's trial, would certainly have felt compelled to follow the existing precedent in its circuit. Tellingly, every circuit court that has addressed the question whether *Gaudin* constitutes a new rule under *Teague* has held that it is. *See United States v. Shunk*, 113 F.3d 31 (5th Cir.1997); *United States v. Swindall*, 107 F.3d 831 (11th Cir.1997)(per curiam). We agree and now hold that *Gaudin* is a new rule for *Teague* purposes.

■ Bilzerian argues that *Gaudin* is not a "new rule" because it is based on the bedrock constitutional principle that a defendant has a right to have a jury make the ultimate determination of guilt as to each element of an offense. While the basis of the Supreme Court's holding in *Gaudin* may indeed involve well-established constitutional principles, this, of itself, does not compel the conclusion that *Gaudin*'s holding is inexorably

not a "new rule" under *Teague*. *See Graham v. Hoke*, 946 F.2d 982, 992–93 (2d Cir. 1991). Because almost all constitutional decisions ultimately trace to some well-established constitutional principle, more is required to declare a rule not to be new. The extra ingredient is that the constitutional decision comes, not as a sunburst, but as an obvious extension of constitutional principles that were well-established at the time the defendant's conviction became final. *See id.* at 992. As discussed above, Bilzerian fails to establish that *Gaudin* was a simple corollary to well-established constitutional principles. This is apparent when all but one federal circuit court of appeals concluded that *Gaudin* was not dictated by established constitutional principles.

■ Bilzerian contends in the alternative that, even if *Gaudin* announces a "new rule" for *Teague* purposes, the *Gaudin* holding falls into one of the *Teague* exceptions. *Teague* recognizes two exceptions to the general rule that new rules of constitutional procedure are not retroactive on collateral review: (1) new rules which "place an entire category of primary conduct beyond the reach of the criminal law, or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense;" and (2) "new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceeding." *Sawyer v. Smith*, 497 U.S. 227, 241–42, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990). Bilzerian concedes that the first exception is inapplicable, but he urges that *Gaudin* fits into the second exception because the right to have a jury decide guilt or innocence is the most important element of a criminal trial. He claims support for his argument in the Declaration of Independence, Blackstone's writings and various Supreme Court opinions.

■ Bilzerian, however, exaggerates the reach of the second *Teague* exception. That a jury determination of guilt or innocence is an important element of a criminal trial does not necessarily mean that *Gaudin* is a "watershed rule" of criminal procedure. Watershed rules "alter our understanding of the bedrock procedural elements" essential to the fairness of a trial. *Teague*, 489 U.S. at 311, 109 S.Ct. at 1076 (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1171, 1180, 28 L.Ed.2d 388 (1971)). The Supreme Court has pointed to the rule announced in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)(the 6th Amendment right to counsel applies to the states) as an example of a watershed rule. *See Saffle*, 494 U.S. at 495, 110 S.Ct. at 1263–64. The rule in *Gaudin* merely shifts the determination of materiality from the judge to the jury. This shifting does not "alter our understanding of the bedrock procedural elements" essential to the fairness of a trial. *Teague*, 489 U.S. at 311, 109 S.Ct. at 1076. There is little reason to believe that juries will have substantially different interpretations of materiality than judges and therefore, practically speaking, *Gaudin* will do little to alter the status quo. Bilzerian's argument that the *Gaudin* rule should be applied retroactively must fail; and because we find that *Gaudin* does not apply retroactively, we see no reason to reach the merits of Bilzerian's additional arguments on this issue.

### B. *United States v. Ali*

■ At the time of Bilzerian's conviction, 18 U.S.C. § 1001(a)(2) punished anyone who "makes any false, fictitious or fraudulent statements or representations" within the jurisdiction of any department or agency of the United States. When Bilzerian was tried, the law of this Circuit did not require any finding of materiality for a conviction under § 1001(a)(2). *See Elkin*, 731 F.2d at 1009.

■ In 1995, in response to the Supreme Court's decision in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), we held in *United States v. Ali*, 68 F.3d 1468 (2d Cir.1995) that materiality was as much an element of an offense under § 1001(a)(2) as under 1001(a)(1). Bilzerian argues that his convictions under § 1001 should be overturned in light of *Ali*. Once again, we first address whether the decision applies retroactively on collateral review. While we have applied *Ali* retroactively on direct review, *see United States v. Ballistrea*,

101 F.3d 827, 834 (2d Cir.1996), we have yet to address the retroactivity question on collateral review. Because the rule announced in *Ali* is substantive rather than procedural, the analysis set forth in *Teague v. Lane* does not apply. *See Ianniello v. United States,* 10 F.3d 59, 63 (2d Cir.1993). When new substantive rules are announced, there is a presumption that they will be applied retroactively. *See Ingber v. Enzor,* 841 F.2d 450, 453–54 (2d Cir.1988).

Courts have repeatedly held that a substantive change in the law resulting in the possibility that a person might have been convicted for conduct that is not illegal is properly applied retroactively on collateral review. *See Ianniello,* 10 F.3d at 63; *Ingber,* 841 F.2d at 454–55; *United States v. Shelton,* 848 F.2d 1485, 1489 (10th Cir.1988). These holdings rest on the Supreme Court's holding in *Davis v. United States,* 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2305–06, 41 L.Ed.2d 109 (1974) that a defendant suffers a fundamental wrong when punished for conduct that simply is not illegal. We conclude that *United States v. Ali* redefined § 1001(a)(2) to legalize certain conduct previously thought to be criminal. Consequently, *Ali* should be applied retroactively on collateral review.

■ Although we agree with Bilzerian that *United States v. Ali* is retroactively applicable on collateral review, we nevertheless affirm the dismissal of Bilzerian's § 2255 petition, because the error here is harmless. Bilzerian suggests that the district court's failure to instruct the jury on materiality as an element of an offense under section 1001(a)(2) is not subject to harmless error analysis and should result in automatic reversal. We disagree.

Most constitutional errors are amenable to harmless error analysis. *See Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182 (1993). The Supreme Court itself has applied a harmless error analysis to a wide range of errors. *See Arizona v. Fulminante,* 499 U.S. 279, 306, 111 S.Ct. 1246, 1262–63, 113 L.Ed.2d 302 (1991). We too have held that improper jury instructions resulting in the possibility that a defendant was convicted of conduct that is not illegal gets a harmless error review.

*Ianniello,* 10 F.3d at 62–63. In *Ianniello* we noted that "[h]armless error analysis is the rule rather than the exception, and [a] court may constitutionally play a guarded role in judging whether facts found by a jury are so conclusive on an ultimate factual issue—an issue undecided by the jury because of a faulty charge—that the error in the charge and resultant absence of an actual injury finding on the ultimate issue are harmless." *Id.* at 64 (quoting *Pope v. Illinois,* 481 U.S. 497, 501–04, 107 S.Ct. 1918, 1921–23, 95 L.Ed.2d 439 (1987).)

■ The failure to include materiality as an element of an offense under § 1001(a)(2) was harmless here because the evidence overwhelmingly demonstrated that Bilzerian would have been convicted even if the jury had been given the issue of materiality. The jury returned a special verdict form in each of the two counts of securities fraud specifically finding that the misrepresentations Bilzerian made were material. The underlying facts in the securities fraud counts are identical to the underlying facts in the § 1001 counts. No rational juror could conclude, on the one hand, that the misrepresentations were material for two counts, but, on the other, those same misrepresentations were not material for other counts. *See Ianniello,* 10 F.3d at 65.

## CONCLUSION

We have considered Bilzerian's additional arguments and find them to be meritless in a summary order filed herewith. The judgment of the district court is AFFIRMED.