**Humberto HERRERA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CV 01–1015(RR).

United States District Court, E.D. New York.

July 25, 2001.

---

Humberto Herrera, Fort Dix, NJ, Pro Se.

Honorable Alan Vinegrad, United States Attorney, Eastern District Of New York by Bernadette Miragliotta, Assistant U.S. Attorney, Brooklyn, NY, for Respondent.

### Memorandum and ORDER

RAGGI, District Judge.

Humberto Herrera, who was convicted on November 4, 1999 after a jury trial before this court on charges of conspiring to distribute cocaine in violation of 21 U.S.C. § 846, *see United States v. Grajales,* 98 CR 444(RR), now moves *pro se* to have his conviction and sentence vacated pursuant to 28 U.S.C. § 2255. Herrera is presently incarcerated, serving a 121 month term of incarceration, which reflects the low end of his 121–151 month guideline range. With the assistance of counsel, Herrera unsuccessfully challenged his conviction on direct appeal. *See United States v. Herrera,* 216 F.3d 1073 (2d Cir. 2000), summary order available at 2000 WL 839965, 216 F.3d 1073 (2d Cir.2000). In his present collateral challenge, Herrera asserts that (1) his conviction and sentence are at odds with the Supreme Court's recent decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because (a) the indictment in his case failed to allege a specific quantity of drugs, and (b) the jury was not asked to find quantity proved beyond a reasonable doubt; and (2) both his appointed and retained counsel were constitutionally ineffective. The United States opposes Herrera's motion, arguing that it is both procedurally barred from collateral review and without merit. Having carefully reviewed the submissions of the parties, as well as relevant portions of the criminal record, this court agrees and hereby denies Herrera's motion.

### *Factual Background*

In November 1997, Colombian cocaine supplier Jaime Marin arranged for his con-

federate, Orlando Pena, to travel to New York to meet with Jesus Grajales and to solicit his aid in locating persons willing to transport large quantities of drugs from California, Texas, or Florida to New York. Grajales contacted his friend Jose Estevez, who recruited Claudio Cepeda as a possible driver. Unbeknownst to Pena, Grajales, and Estevez, Cepeda was then a confidential informant working with law enforcement authorities.

By April 1998, Jaime Marin was satisfied that Cepeda could be trusted with the cross-country transport of a large quantity of drugs, and so he arranged for approximately 100 kilograms of cocaine to be moved from Mexico to California where it was delivered to Cepeda. Upon receipt, Cepeda promptly conveyed the drugs to federal law enforcement agents. Subsequent laboratory analysis confirmed that the drugs seized were 85.76 kilograms net weight of cocaine. Estevez and Herrera stipulated to this analysis.

On May 12, 1998, Grajales and Pena met with Cepeda in New York and paid him $20,000 for transporting the cocaine from California. The following day, Cepeda delivered the purported cocaine—now replaced with a sham substance by federal authorities—to Pena. Pena accepted delivery, was promptly arrested, and immediately agreed to cooperate. He placed a series of telephone calls to Jaime Marin and others seeking instructions about where to deliver the cocaine. Thereafter, Pena was contacted on his pager from a New Jersey number subscribed to by petitioner, Humberto Herrera.

As a result of these communications, Pena drove a car purportedly laden with the cocaine to a parking lot in the vicinity of Seventh Avenue and 14th Street in Manhattan. There he met two men previously unknown to him: Hector Toro Davilla and Humberto Herrera. When Herrera asked Pena if the "merchandise [was] concealed in a safe place," Pena replied that it was in the trunk of his car. Trial Trans. at 394. Herrera expressed initial reluctance to drive Pena's car, but Toro–Davilla insisted, stating, "that is what you came for." *Id.* As Herrera approached Pena's parked car, agents stationed in the vicinity observed him checking the area for signs of law enforcement surveillance. Once Herrera entered the car and attempted to drive away, federal agents placed him under arrest. Telephone records from later that evening revealed a number of calls placed from a cellular telephone subscribed to by Jaime Marin's son Andres to the telephone at Humberto Herrera's New Jersey residence.

### Discussion

### I. *The Apprendi Claim*

In *Apprendi v. New Jersey,* the Supreme Court held that "any fact" other than a prior conviction "that increases the penalty for a crime beyond the prescribed statutory maximum," 530 U.S. at 490, 120 S.Ct. 2348, is the "functional equivalent of an element of a greater offense," *id.* at 494 n. 19, 120 S.Ct. 2348, and "must be submitted to a jury, and proved beyond a reasonable doubt," *id.* at 490, 120 S.Ct. 2348. Herrera submits that his conviction and sentence run afoul of this holding since he was sentenced pursuant to 21 U.S.C. § 841(b)(1)(A)(ii) (providing for a sentence of 10–years–to–life imprisonment for drug crimes involving "5 kilograms or more of a mixture or substance containing ... cocaine") without a specific allegation of drug quantity in his indictment or any jury finding that quantity had been proved beyond a reasonable doubt.

### A. *Procedural Bar*

The United States submits that Herrera's *Apprendi* claim is procedurally

barred both (1) because it was not raised on direct appeal, and (2) because *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), generally proscribes the application of new criminal procedural rules on collateral review. *See United States v. Mandanici,* 205 F.3d 519, 527 (2d Cir.2000) ("Under *Teague,* 'new rules' of constitutional criminal procedure or novel applications of old rules 'are generally not applied retroactively on [collateral] review'" (quoting *Bilzerian v. United States,* 127 F.3d 237, 240 (2d Cir.1997))). Both arguments are persuasive.

1. *Default of Claim on Direct Appeal*

■ As a rule, a petitioner's failure to raise a claim of error on direct appeal constitutes a procedural default that bars collateral review absent a showing of good cause to excuse the default and ensuing prejudice. *See Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993); *Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992). While an exception is made for defaulted claims of ineffective assistance of trial counsel in cases where the same attorney represents a party both at trial and on appeal, *see Billy–Eko v. United States,* 8 F.3d 111 (2d Cir.1993), no such circumstances apply to Herrera's *Apprendi* claim.

■ Indeed, even the fact that the Second Circuit had already refused to treat drug quantity as an element of crimes charged under 21 U.S.C. §§ 841, 846, *e.g., United States v. Campuzano,* 905 F.2d 677, 679 (2d Cir.1990), could not establish good cause to excuse Herrera's default of the claim. In *Bousley v. United States,* 523 U.S. at 623, 118 S.Ct. 1604, the Supreme Court expressly refused to excuse a petitioner's appellate default of a § 924(c) challenge on the grounds that the Court of Appeals had rejected such claims prior to *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Quoting *Engle v. Isaac,* 456 U.S. 107, 130 n. 35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Court explained that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley v. United States,* 523 U.S. at 623, 118 S.Ct. 1604; *accord United States v. Sanders,* 247 F.3d 139, 145–46 (4th Cir.2001) (rejecting argument that procedural default of *Apprendi*-based claim was excused by futility); *United States v. Smith,* 241 F.3d 546, 548 (7th Cir.2001) (refusing to find futility sufficient cause to excuse default of *Apprendi* claim). This conclusion is particularly warranted in Herrera's case given that his brief with the Court of Appeals was filed in February 2000, after the Supreme Court had decided *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the case that foreshadowed *Apprendi* by holding that the penalty enhancing provisions of the federal carjacking statute were not mere sentencing factors for the court but rather additional elements that had to be charged and proved. Indeed, by the time Herrera filed his appellate brief, the Supreme Court had granted a writ of certiorari in *Apprendi* itself. *See Apprendi v. New Jersey,* 528 U.S. 1018, 120 S.Ct. 525, 145 L.Ed.2d 407 (1999). The question on which certiorari review was granted in *Apprendi* was as follows: "Is New Jersey's hate crime law, N.J. Stat. Ann. § 2C:44 3e, unconstitutional insofar as it provides for extended term of imprisonment increasing maximum possible penalty by 10 years, on basis of proof by preponderance of evidence rather than proof beyond reasonable doubt, and denies defendants rights to notice by indictment and trial by jury?" *Apprendi v. New Jersey,* 528 U.S. 1018, 120 S.Ct. 525, 145 L.Ed.2d 407 (1999).

▮▮▮▮ In the absence of good cause to excuse his procedural default, Herrera can secure collateral review of his *Apprendi* claim only by demonstrating that the alleged error "has probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. at 623, 118 S.Ct. 1604 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). This he cannot do. As the Court of Appeals ruled in rejecting his general sufficiency challenge on direct appeal, the evidence adduced would allow "a rational juror ... [to] infer beyond a reasonable doubt that Herrera was a knowing member of the narcotics conspiracy." *United States v. Herrera*, 2000 WL 839965, *1, 216 F.3d 1073. Further, since Herrera stipulated that the quantity of drugs actually seized in the case totaled 85.76 kilograms of cocaine, and since Herrera was arrested picking up what he believed was a carload of cocaine, any jury would readily have found beyond a reasonable doubt that the conspiracy at issue involved more than the five kilograms provided in 21 U.S.C. § 841(b)(1)(A)(ii).

### 2. *Teague v. Lane Procedural Bar*

▮▮▮▮ The United States submits that Herrera's *Apprendi* argument must be rejected because it seeks the collateral application of a new criminal procedural rule, which is generally proscribed by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334. Although the Second Circuit has yet to rule on the issue, two circuit courts have concluded that *Apprendi* is not retroactively applicable on collateral review. *See United States v. Sanders*, 247 F.3d at 146–51; *Jones v. Smith*, 231 F.3d 1227, 1236–38 (9th Cir.2000); *see also Browning v. United States*, 241 F.3d 1262, 1266 (10th Cir.2001) (and cases cited therein, all holding that *Apprendi* cannot be applied retroactively to second or successive habeas motions). This court agrees,

particularly since the circumstances of Herrera's case fall within neither of the narrow exceptions to *Teague*.

Those exceptions allow for collateral application of new procedural rules that (1) place certain conduct "beyond the power of the criminal law-making authority to proscribe," or (2) implicate procedures "implicit in the concept of ordered liberty." *Teague v. Lane*, 489 U.S. at 307, 109 S.Ct. 1060 (citations and internal quotation marks omitted). The first exception is plainly inapplicable to this case since *Apprendi* does not decriminalize any drug trafficking addressed in Title 21 of the United States Code, certainly not the sort of large-scale cocaine conspiracy engaged in by Herrera. *See United States v. Sanders*, 247 F.3d at 148. As for the second *Teague* exception, it applies only to those "watershed" rules of criminal procedure, such as *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), *see O'Dell v. Netherland*, 521 U.S. 151, 167, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), "without which the likelihood of an accurate conviction is seriously diminished." *Teague v. Lane*, 489 U.S. at 312–13, 109 S.Ct. 1060 (drawing on Justice Harlan's opinions in *Desist v. United States*, 394 U.S. 244, 256, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)) (Harlan, J., dissenting), and *Williams v. United States*, 401 U.S. 667, 693–95, 91 S.Ct. 1171, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part). Since *Teague*, the Supreme Court has not held any new rule to qualify for collateral retroactive application. *See United States v. Sanders*, 247 F.3d at 148; *United States v. Mandanici*, 205 F.3d at 529 (citing eleven cases in which the Supreme Court rejected claim that new rule fit within second *Teague* exception). For the reasons discussed *infra*, this court holds that *Apprendi*, at least as applied to the alleged omissions of

pleading and proof in Herrera's case, similarly does not state a new rule within this exception.

### a. *Failure to Plead Drug Quantity in Indictment*

Herrera complains that Count One of his indictment charges him with "knowingly and intentionally conspir[ing] to distribute and possess with intent to distribute cocaine," but makes no mention *in haec verba* of a quantity of drugs in excess of five kilograms. Preliminarily, this court notes that in *Apprendi,* the Supreme Court did not specifically hold that facts triggering sentencing enhancing statutes must be pleaded in an indictment as well as proved to a jury beyond a reasonable doubt. *See Apprendi v. New Jersey,* 530 U.S. at 477, n. 3, 120 S.Ct. 2348 (noting that no pleading challenge was raised by the parties). The issue is, however, now before the Second Circuit on in banc review of a direct appeal. *See United States v. Thomas,* 248 F.3d 76 (2d Cir.2001) (granting in banc review on whether drug quantity under 21 U.S.C. § 841 constitutes an element of the offense that must be alleged in the indictment). Since Herrera's case is on collateral review, however, such a new pleading rule would apply retroactively to his case only if it fit within the second *Teague* exception. Plainly, it does not.

As the Ninth Circuit observed in *Jones v. Smith,* 231 F.3d at 1238, although fundamental fairness requires that a criminal defendant be informed of the nature of the charge against him, *see* U.S. Const. amend. VI, the text of an indictment is not the only means for conveying such information consistent with ordered liberty. In Herrera's case, notice of the drug quantity at issue was plainly provided in the parenthetical citation immediately following the text of Count One. That parenthetical cites 21 U.S.C. § 841(b)(1)(A)(ii)(II), which triggers a statutory sentencing range of ten-years-to-life incarceration when cases involve "5 kilograms or more of a mixture of substance containing ... cocaine." "It is this court's understanding that no citation to § 841(b) was included in the *Thomas* indictment presently on in banc review before the Court of Appeals." *See United States v. Thomas,* 248 F.3d at 77.

Almost thirty years ago, in *United States v. Berlin,* 472 F.2d 1002, 1008 (2d Cir.1973), the Second Circuit held that citation to a statutory section would not necessarily cure an indictment that failed to allege all elements of an offense. *Cf. United States v. Hernandez,* 980 F.2d 868, 871–72 (2d Cir.1992) (holding that language in general caption of indictment could be read together with text of specific count to satisfy the requirement that all elements be pleaded). *Berlin,* however, involved a four count indictment with citations to 18 U.S.C. §§ 1010 and 1014, statutes that identified all the elements of the charged crimes. *See United States v. Berlin,* 472 F.2d at 1005, 1008. Reference to such statutes in an indictment may simply serve to identify the legal authority for those elements pleaded in the text, however incomplete. It is hardly obvious that the citation is intended to supplement the defective pleading with missing elements. In Herrera's case, however, the text of the indictment pleaded all the elements of a general conspiracy to distribute or possess with intent to distribute cocaine as prohibited by 21 U.S.C. §§ 841(a)(1), 846. In such a context, the *only* purpose served by the citation to 21 U.S.C. § 841(b)(1)(A)(ii)(II) was to alert defendant to the quantity of drugs at issue and the attending sentencing consequences.

In sum, citation to the relevant subparts of 21 U.S.C. § 841(b) may very well be

enough to satisfy any drug quantity pleading requirement inferred from *Apprendi*. In any event, in Herrera's case, it is certainly enough to preclude any pleading deficiency from coming within the narrow parameters of the second *Teague* exception. *See Jones v. Smith*, 231 F.3d at 1238 (refusing to apply *Apprendi* to a collateral challenge to an indictment, holding that where a defendant has actual notice of the particular accusation against him and the sentence he might receive, "the omission of particular key words from the [formal charge] neither increases the risk that an innocent person will be convicted nor hinders the fundamental fairness of the trial").

### b. Failure to Prove Quantity Beyond a Reasonable Doubt

As for the proof requirements of *Apprendi*, Herrera complains that his case was submitted to the jury without a special interrogatory requiring a finding that drug quantity had been proved beyond a reasonable doubt. In *Bilzerian v. United States*, however, the Second Circuit expressly rejected an analogous claim that the rule in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which requires that "materiality" in false statement prosecutions under 18 U.S.C. § 1001 be submitted to a jury rather than decided by the court, triggered the second *Teague* exception. 127 F.3d at 241. The court's reasoning applies with equal force to Herrera's attempt to apply the *Apprendi* rule to his case:

> [a new rule that] merely shifts the determination of [facts] from the judge to the jury ... does not "alter our understanding of the bedrock procedural elements" essential to the fairness of a trial. *Teague*, 489 U.S. at 311, 109 S.Ct. 1060. There is little reason to believe that juries will have substantially different interpretations of [facts] than judges

and therefore, practically speaking, [such a new rule] will do little to alter the status quo.

*Id.; see also United States v. Mandanici*, 205 F.3d at 527–31 (holding that rule requiring "materiality" to be proved beyond a reasonable doubt in § 1001 prosecutions did not apply retroactively on collateral review). Indeed, *Bilzerian* provides the foundation for the Fourth Circuit's recent decision in *United States v. Sanders*, 247 F.3d at 148–51, expressly refusing to apply *Apprendi* retroactively to the question of drug quantity in a conspiracy prosecuted under §§ 841, 846.

This court adopts the logic of *Bilzerian, Mandanici,* and *Sanders*. In Herrera's case, the authorities actually seized the load of cocaine that was the focus of the charged conspiracy, laboratory analysis confirmed that the cocaine had a net weight of 85.76 kilograms, and the parties stipulated to the results of that analysis. Under these circumstances, there is no reason to think that a jury applying a higher standard of proof would find differently than a judge on the issue of whether the conspiracy dealt in more than five kilograms of cocaine. Because no exception to *Teague v. Lane* warrants the retroactive application of *Apprendi v. New Jersey* to Herrera's case, his claim is procedurally barred.

### B. The Merits of Herrera's Apprendi Claim

Even if no procedural bar stood in the way of Herrera's *Apprendi* claim, petitioner would not be entitled to have his conviction or sentence vacated for the simple reason that his claim lacks merit.

### 1. Failure to Plead Drug Quantity in the Indictment

 Certainly, the grand jury's failure to specify a particular drug quantity in

the text of Count One did not deprive this court of jurisdiction as Herrera suggests. This is because 21 U.S.C. §§ 841(a)(1), 846 prohibit conspiracies to traffic in *any* quantity of cocaine. Assuming *arguendo* that the failure to plead a drug quantity in Count One precluded this court from imposing sentence on Herrera pursuant to § 841(b)(1)(A)(ii)(II), the court would retain jurisdiction to proceed pursuant to § 841(b)(1)(C), which provides for a sentence of from zero-to-twenty years' incarceration for persons who traffic in unspecified quantities of cocaine. Since Herrera's sentence of 121 months was based on the same 121–151 month guideline range that would apply regardless of whether his case fell within § 841(b)(1)(A)(ii)(II) or § 841(b)(1)(C), *see generally United States v. Garcia*, 240 F.3d 180, 184 (2d Cir.2001) (holding that *Apprendi* does not require a guideline factor "unrelated to a sentence above a statutory maximum or to a mandatory statutory minimum" to be submitted to a jury or proved beyond a reasonable doubt), and since the sentence is well below the twenty-year maximum provided in § 841(b)(1)(C), petitioner cannot sustain his claim that this court entered judgment of conviction in the absence of jurisdiction.

### 2. *Failure to Prove Quantity Beyond a Reasonable Doubt*

■ Herrera errs in asserting that drug quantity was not proved beyond a reasonable doubt in his case. Although the jury made no express finding that the charged conspiracy dealt in five kilograms or more of cocaine, Herrera stipulated at trial that the amount of cocaine seized after its delivery into the United States by fellow conspirators was 85.76 kilograms. Since *Apprendi*, the Second Circuit has twice ruled that a defendant's trial stipulation as to drug quantity can be enough to trigger the higher penalties provided in § 841(b)(1)(A) & (B). *United States v.*

*White*, 240 F.3d 127, 134 (2d Cir.2001) (holding that defendant who stipulates to crack in excess of twenty grams satisfies the requirement of the five-to-forty year sentencing range of § 841(b)(1)(B)); *United States v. Champion*, 234 F.3d 106, 110 & n. 3 (2d Cir.2000) (per curiam) (defendant's stipulation that crime involved more than 2.6 kilograms of heroin renders a jury finding on the issue unnecessary and brings the case within the ten-years-to-life range provided in § 841(b)(1)(A)). In light of Herrera's stipulation, this court correctly observed at sentence that defendant was subject to the ten-year mandatory minimum provided in § 841(b)(1)(A)(ii)(II). For all these reasons, the court rejects Herrera's *Apprendi* challenge to his conviction and sentence both because the claims are procedurally barred and, in any event, without merit.

## II. *Ineffective Assistance of Counsel*

At trial, Herrera was represented by appointed counsel, Barry Gene Rhodes, Esq., who represented him with vigor and determination. After the jury returned a guilty verdict, Herrera dismissed Mr. Rhodes and found the means to retain new counsel for sentencing, B. Alan Seidler, Esq. He now submits that both these attorneys were constitutionally ineffective. The claims merit little discussion.

### A. *Mr. Rhodes*

■ Herrera faults Mr. Rhodes for failing to call co-conspirator Hector Toro–Davilla, as a defense witness. This precise Sixth Amendment claim was raised by Mr. Seidler on direct appeal and summarily rejected by the Second Circuit. *See* Herrera's Brief on Appeal at 19; *United States v. Herrera*, 2000 WL 839965, *2, 216 F.3d 1073. A district court presented with a § 2255 motion may not reconsider claims already reviewed on direct appeal. *Doug-*

*las v. United States*, 13 F.3d at 46; *Barton v. United States*, 791 F.2d 265, 267 (2d Cir.1986). Accordingly, this part of Herrera's ineffectiveness claim is barred from collateral review.

### B. *Mr. Seidler*

Herrera faults Mr. Seidler for failing to move for a reduction from the mandatory minimum sentence under what is commonly referred to as the "safety valve" provision of 18 U.S.C. § 3553(f).

■ To sustain a claim of ineffective assistance, a prisoner must demonstrate both (1) that counsel's performance was so unreasonable under prevailing professional norms that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) that counsel's ineffectiveness prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *Accord United States v. Trzaska*, 111 F.3d 1019, 1029 (2d Cir.1997). Herrera can satisfy neither of these requirements.

He asserts that counsel acted unreasonably when he misreported to Herrera that he was ineligible for the "safety valve" because he had elected to stand trial. *See* Hernandez Memo in Support of § 2255 Motion at 9. In opposition, the United States submits a contrary declaration from Mr. Seidler stating that he discussed the possibility of a "safety valve" proffer with Herrera and advised his client that to qualify for any benefits he would have to disclose truthfully all information he had regarding the crime of conviction. Exh. E to Gov't Memo in Opp. Herrera maintained that he was ignorant of any drug trafficking on the day of his arrest and advised

Seidler that he preferred to challenge his conviction on appeal. *Id.* Thus, when at sentencing, the court asked whether the "safety valve" had been satisfied in ·the case, Mr. Seidler replied, "No, no, Mr. Herrera is going to appeal his sentence." Sentencing Trans. at 6.

While an evidentiary hearing is sometimes required to resolve factual disputes between parties as' to the reasonableness of an attorney's actions, the court concludes that no hearing is necessary in this case. First, Herrera's version of events appears at odds with other undisputed facts. Specifically, Herrera told this court at sentencing that he was satisfied with Mr. Seidler's assistance, *see id.* at 2, which is hardly consistent with his claim that counsel was refusing to seek a "safety valve" session with the government. Indeed, even after Mr. Seidler told the court that the "safety valve" was not being pursued because his client wished to appeal, Herrera voiced no contrary position. When asked by the court if he wished to say anything, Herrera stated simply: "What I want to say is may God enlighten you so you'll be fair. I love this country. I have a lot to be grateful for. I have nothing else to say." *Id.* at 7. Further undercutting Herrera's claim that counsel unreasonably dismissed his request to pursue a "safety valve" motion is the fact that Mr. Seidler continued to represent Herrera on direct appeal. Certainly, Herrera knew that he could change counsel if he was dissatisfied. He had, after all, substituted Mr. Seidler for Mr. Rhodes. Moreover, he knew he could raise appellate challenges to his counsel's performance as demonstrated by his claims against Mr. Rhodes on appeal.

■ Even if Herrera could persuade the court that his version of Mr. Seidler's conduct is accurate and that counsel's advice was objectively unreasonable, his

Sixth Amendment claim would still fail because he cannot show ensuing prejudice. Nowhere in Herrera's papers does he demonstrate that, but for Mr. Seidler's omission, petitioner would have qualified for "safety valve" consideration. 18 U.S.C. § 3553(f)(5) specifically requires that a defendant seeking to avoid a mandatory minimum sentence truthfully disclose to the government "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Herrera has never indicated a willingness to comply with this provision. Even now, he does not admit that he was a guilty participant in the charged conspiracy, much less does he disclose his full relationship with the various participants to whom he is linked by evidence of personal and telephonic contact. Indeed, implicit in Herrera's argument that trial counsel was ineffective in failing to call Hector Toro Davilla as a witness is the contrary claim that petitioner was an unwitting and, therefore, innocent participant in the crime of which he stands convicted.

Having thus failed to demonstrate that he could have qualified for "safety valve" consideration at sentencing, Herrera's Sixth Amendment challenge to Mr. Seidler's representation must be denied as without merit.

### Conclusion

For the reasons stated, the court finds that Herrera's *Apprendi*-based challenges to his conviction and sentence must be denied both as procedurally barred and without merit. The court further rejects Herrera's Sixth Amendment challenge to the representation afforded by his attorneys because, in the case of trial counsel,

the claim is procedurally barred, and, in the case of sentencing counsel, the claim is without merit. The court grants a certificate of appealability on the *Apprendi* claims but denies a certificate on the Sixth Amendment claims. The Clerk of the Court is to mark this case closed.

*SO ORDERED.*